UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | |
|---|---|
| MARK AND NAESHA LEYS, | Case No. 1:08-cv-1084 |
| Plaintiffs, | Chief Judge Paul L. Maloney |
| v. | |
| LOWE'S HOME CENTERS, INC., | |
| Defendant. | |

---

## OPINION AND ORDER
**Granting the Defendant's Motion for Summary Judgment;
Terminating and Closing the Case**

This is a premises-liability action under Michigan law.[1] Mark Leys and his wife Naesha

---

[1]

Michigan courts determine "[t]he gravamen of an action . . . by reading the claim as a whole," *Tipton v. Wm. Beaumont Hosp.*, 697 N.W.2d 552, 555-56, 266 Mich. App. 27, 33 (Mich. App. 2005) (P.J. Wilder, Fitzgerald, K.F. Kelly) (citing *Simmons v. Apex Drug Stores, Inc.*, 201 Mich. App. 250, 253, 506 N.W.2d 562 (Mich. App. 1993) (Corrigan, J.)), "looking 'beyond the procedural labels to determine the exact nature of the claim'", *Tipton*, 697 N.W.2d at 556, 266 Mich. App. at 33 (quoting *MacDonald v. Barbarotto*, 161 Mich. App. 542, 547, 411 N.W.2d 747, 749 (Mich. App. 1987)).

Based primarily on paragraph 11 of the complaint, the court determines that the Leys' claim sounds in premises liability, not in general or ordinary negligence, because Lowe's liability (if any) "emanates merely from the defendant's duty as an owner, possessor, or occupier of land", *Tipton*, 697 N.W.2d at 556, 266 Mich. App. at 33, not from the basic common-law rule which "imposes on *every person* engaged in the prosecution of any undertaking an obligation to use due care, or to so govern his actions as not to unreasonably endanger the person or property of others", *Clark v. Dalman*, 379 Mich. 251, 261, 150 N.W.2d 755, 760 (Mich. 1967) (emphasis added).

*Contrast Floyd v. Insulspan, Inc.*, 2009 WL 3117630, *2 (Mich. App. Sept. 29, 2009) (p.c.) (P.J. Murray, Markey, Borrello) ("Plaintiff alleges that Defendant was negligent in failing to protect

Leys (together, "Leys") sued Lowe's Home Centers, Inc. ("Lowe's") in Michigan state court, and Lowe's filed a notice invoking this court's diversity removal jurisdiction. Neither the Leys' complaint nor Lowe's removal papers alleged facts sufficient to establish diversity jurisdiction. Accordingly, this court ordered Lowe's to show cause, no later than February 9, 2009, why this case should not be remanded to state court for lack of removal jurisdiction. *See Leys v. Lowe's Home Ctrs., Inc.*, 2009 WL 80380, *8-9 (W.D. Mich. Jan. 9, 2009) (Maloney, C.J.). On February 6, 2009, Lowe's timely filed a response to the order, with attachments supporting each assertion regarding the citizenship of the parties and the amount in controversy. Three weeks passed after the Leys were electronically served with Lowe's response, and they did not file a reply. Accordingly, the court proceeded without waiting further for a reply from the Leys, and found that Lowe's had established diversity jurisdiction. *See Leys v. Lowe's Home Ctrs., Inc.*, 2009 WL 514291 (W.D. Mich. Mar. 2, 2009) (Maloney, C.J.).

Lowe's filed a motion for summary judgment on August 27, 2009, the plaintiffs filed an opposition brief on September 27, 2009, and Lowe's did not file a reply brief. For the reasons that follow, the court will grant Lowe's motion.

**LEGAL STANDARD: SUMMARY JUDGMENT**

"Summary judgment is proper if the 'pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant

---

the lumber and building materials from the elements, in particular the snow, and for failing to remove the snow prior to loading the materials onto his truck. Plaintiff's claim sounds in ordinary negligence. This is because plaintiff's claim is based on the conduct of defendant's employees, and does not bear any relation to defendant's ownership of the premises.") (citing, *inter alia*, *Hiner v. Mojica*, 271 Mich. App. 604, 615, 722 N.W.2d 914, 921-22 (Mich. App. 2006) (p.c.) (P.J. Jansen, Murphy, Fort Hood), *app. denied*, 477 Mich. 1124, 730 N.W.2d 249 (Mich. 2007)).

is entitled to summary judgment as a matter of law.'" *Portinga v. Taylor*, 2009 WL 910800, *5, – F. Supp.2d –, – (W.D. Mich. Apr. 2, 2009) (Maloney, C.J.) (quoting *Patterson v. Hudson Area Schools*, 551 F.3d 438, 444 (6th Cir. 2009) (quoting FED. R. CIV. P. 56(c)); *see also Schreiber v. Philips Display Components Co.*, – F.3d –, –, 2009 WL 2840429, *6 (6th Cir. Sept. 2, 2009).[2] *Accord Alderman v. JC Dev. Communities, LLC*, 2009 WL 2607084, *1 (Mich. App. Aug. 25, 2009) (p.c.) (P.J. Owens, Servitto, Gleicher) ("Summary disposition is proper when, upon examining the pleadings, admissions and other evidence in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.") (citing *Brown v. Brown*, 739 N.W.2d 313, 316 (Mich. 2007)).

The movant has the burden of proving the absence of genuine issues of material fact and its entitlement to judgment as a matter of law. *ARS*, 602 F. Supp.2d at 845 (citing *Conley*, 266 F. App'x at 404 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). However, if the moving party seeks summary judgment on an issue for which it does not bear the burden of proof at trial – e.g., if the movant is defending against a claim – "it may meet its burden merely by showing 'that there is an absence of evidence to support the moving party's case.'" *Moldowan v. City of Warren*, – F.3d –, –, 2009 WL 2497969, *12 (6th Cir. Aug. 18, 2009) (quoting *Celotex*, 477 U.S. at 323). *See*

---

[2]

Before the December 2007 amendment, FED. R. CIV. P. 56(c) stated that summary judgment is appropriate if the "'pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Appalachian Railcar Servs., Inc. v. Consumers Energy Co.*, 602 F. Supp.2d 829, 845 (W.D. Mich. 2008) (Maloney, J.) ("ARS") (quoting *Conley v. City of Findlay*, 266 F. App'x 400, 404 (6th Cir. 2008) (Griffin, J.)).

The amendment was stylistic only. *Portinga v. Taylor*, 2009 WL 910800, *5 n.9 (W.D. Mich. Apr. 2, 2009) (Maloney, C.J.) (citing *Dobrowiak v. Convenient Family Dentistry, Inc.*, 315 F. App'x 580, 584 n.4 (6th Cir. 2009) (citing FED. R. CIV. P. 56(c), Adv. Comm. Notes))).

*also Wilson v. Continental Dev. Co.*, 112 F. Supp.2d 648, 654 (W.D. Mich. 1999) (Bell, J.) (movant "need not support its motion with affidavits or other materials 'negating' the opponent's claim"; rather, its initial burden is only to "point out to the district court that there is an absence of evidence to support the nonmoving party's case . . . .") (citing *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339 (6th Cir. 1993)), *aff'd o.b.*, 234 F.3d 1271, 2000 WL 1679477 (6th Cir. 2000). *Accord Claspell v. Denso Mfg. Michigan, Inc.*, 2001 WL 1545684, *2 (Mich. App. Dec. 4, 2001) (p.c.) (P.J. O'Connell, Sawyer, Smolenski) ("That standard is exactly the same as the standard for summary disposition used under Michigan law . . . .").

Once the movant has met its burden, the non-movant must present "'significant probative evidence'" to demonstrate that there is more than "'some metaphysical doubt as to the material facts.'" *ARS*, 602 F. Supp.2d at 845 (citing *Conley*, 266 F. App'x at 404 (quoting *Moore*, 8 F.3d at 339-40)). **The non-movant may not rest on the mere allegations of his pleadings.** *Griffin v. Reznick*, 609 F. Supp.2d 695, 698 (W.D. Mich. 2008) (Maloney, C.J.) (citing, *inter alia*, FED. R. CIV. P. 56(e) and *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995)); *see also Transition Healthcare Assocs., Inc. v. Tri-State Health Investors, LLC*, 306 F. App'x 273, 278 (6th Cir. 2009); *accord Kachudas v. Invaders Self Auto Wash, Inc.*, 2009 WL 2767303, *2 (Mich. App. Sept. 1, 2009) (p.c.) (P.J. Wilder, Cavanagh, Murray) ("When the burden of proof at trial would rest on the non-moving party, the nonmovant may not rest upon mere allegations or denials in the pleadings, but must, by documentary evidence, set forth specific facts showing that there is a genuine issue for trial.") (citing *The Healing Place at No. Oakland Ctr. v. Allstate Ins. Co.*, 744 N.W.2d 174, 177 (Mich. App. 2007) (citing, *inter alia*, *Quinto v. Cross & Peters Co.*, 547 N.W.2d 314, 317 (Mich. 1996))).

If the movant puts forward evidence – such as affidavits, purported business records,

purported government records, etc. – the other party cannot withstand summary judgment by simply sitting mute and failing to challenge the authenticity, admissibility, or veracity of those documents. *See, e.g., Donoho v. Smith Cty. Bd. of Ed.*, 21 F. App'x 293, 298 (6th Cir. 2001) (Boggs, J.) (affirming summary judgment for defendant employer, Circuit noted that plaintiff's "affidavit does nothing to challenge the evidence put forward by the defendants that the last IEP meeting . . . also included provision to her of the apparently usual verbal and written notices of her rights.").[3]

Moreover, the mere existence of an alleged factual dispute between the parties will not defeat an otherwise properly supported summary judgment motion; there be some genuine issue of *material* fact. *ARS*, 602 F. Supp.2d at 845 (citing, *inter alia*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986))). And the non-movant "cannot defeat a properly supported motion for summary judgment motion by 'simply arguing that it relies solely or in part upon credibility determinations.'" *Heggie v. Kuzma*, 2009 WL 594908, *10 (W.D. Mich. Mar. 6, 2009) (Maloney, C.J.) (quoting *Fogerty v. MGM Group Holdings, Inc.*, 379 F.3d 348, 353 (6th Cir. 2004) (non-movant may not "have a trial on the hope that a jury may disbelieve factually uncontested proof")).

The court must accept the non-movant's factual allegations, *ACLU v. NSA*, 493 F.3d 644, 691 (6th Cir. 2007) (concurrence) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)),

---

[3]

*See, e.g., SBA v. McDonald*, 1985 WL 13600, *1 (6th Cir. Aug. 15, 1985) (p.c.) ("Even assuming the checks and money orders were mailed, there is no genuine issue as to their receipt. McDonald offers nothing to dispute the sworn affidavit that payment was not received. Payment does not occur without receipt. Summary judgment was appropriate.");

*US v. One 1983 Mercedes-Benz 380SL*, 1991 WL 276262, *6 (6th Cir. Dec. 20, 1991) ("[C]laimant's verified claim contains a sworn statement by the company's general manager '[t]hat at no time did A.D.E. have any knowledge or reason to believe that the property in which it claims an interest was being used or would be used in violation of the law.' The government has produced nothing to dispute the truth of that assertion. * * * The government has pointed to no facts that would entitle it to defeat A.D.E.'s claim, and A.D.E. is entitled to summary judgment . . . .");

*cert. denied*, – U.S. –, 128 S.Ct. 1334 (2008),[4] and view the evidence in the light most favorable to the non-movant, giving it the benefit of all reasonable inferences. *Fox v. Eagle Dist. Co., Inc.*, 510 F.3d 587, 592 (6th Cir. 2007) (Griffin, J.); *see also Patterson*, 551 F.3d at 445.[5]

But the court considers its evidence only to the extent that it would be admissible at trial. *ARS*, 602 F. Supp.2d at 845 (citing *Healing Place*, 744 N.W.2d at 177 (citing MICH. CT. R. 2.116(G)(6) and *Veenstra v. Washtenaw Country Club*, 645 N.W.2d 643, 648 (Mich. 2002))).

Ultimately, entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element to that party's case, and on which that party w[ould] bear the burden of proof at trial." *Davison v. Cole Sewell Corp.*, 231 F. App'x 444, 447 (6th Cir. 2007) (quoting *Celotex*, 477 U.S. at 322).[6] "As Chief Judge Bell has characterized the

---

[4]

*Accord Fall v. Loudon*, 2008 WL 375989, *6 (Mich. App. Feb. 12, 2008) (citing *Dolan v. Continental Airlines/Continental Express*, 563 N.W.2d 23, 26 (Mich. 1997)).

[5]

*Accord Denha v. Dart Props., Inc.*, 2009 WL 30459, *1 (Mich. App. Jan. 6, 2009) (p.c.) (P.J. Zahra, JJ. O'Connell & Fort Hood) (citing *Walsh v. Taylor*, 689 N.W.2d 506, 511 (Mich. App. 2004) (citing *Spiek v. MDOT*, 572 N.W.2d 201 (Mich. 1998))).

[6]

A trilogy of 1986 Supreme Court decisions "made clear that, contrary to some prior precedent, the use of summary judgment is not only permitted but encouraged in certain circumstances . . . ." *Collins v. Assoc'd Pathologists, Ltd.*, 844 F.2d 473, 475-76 (7th Cir. 1988). *Accord In re Fin. Federated Title & Trust, Inc.*, 347 F.3d 880 (11th Cir. 2003) (the trilogy "encourage the use of summary judgment as a means to dispose of factually unsupported claims.");

*Hurst v. Union Pacific Rail Co.*, 1991 WL 329588, *1 (W.D. Okla. 1991) ("This trilogy of cases establishes that factual and credibility conflicts are not necessarily enough to preclude summary judgment and encourage that a summary judgment be used to pierce the pleadings and determine if there is in actuality a genuine triable issue."), *aff'd*, 958 F.2d 1002 (10th Cir. 1992);

*Bowser v. McDonald's Corp.*, 715 F. Supp. 839, 840 (S.D. Tex. 1989) (the trilogy "encouraged federal district courts to use summary judgment more frequently and economically by changing the movant's burden of production . . . and by allowing qualitative review of evidence") (citations omitted).

post-trilogy summary-judgment standard, '[w]hile preserving the constitutional right of civil litigants to a trial on meritorious claims, the courts are now vigilant to weed out fanciful, malicious, and unsupported claims before trial.'" *Ellis v. Kaye-Kibbey*, 581 F. Supp.2d 861, 874 (W.D. Mich. 2008) (Maloney, C.J.) (quoting *Wilson*, 112 F. Supp.2d at 654).

## LEGAL STANDARD: APPLICATION OF STATE LAW

When sitting in diversity jurisdiction, this court must apply the choice-of-law rules and, if applicable, the substantive law of the forum State, Michigan. *Amerisure Mut. Ins. Co. v. Carey Transp., Inc.*, 578 F. Supp.2d 888, 897 (W.D. Mich. 2008) (Maloney, C.J.) (citing *CenTra, Inc. v. Estrin*, 538 F.3d 402, 409-10 (6th Cir. 2008) (citing *Himmel v. Ford Motor Co.*, 342 F.3d 593, 598 (6th Cir. 2003))); *see also Savedoff v. Access Group, Inc.*, 524 F.3d 754, 762 (6th Cir. 2008) ("We generally apply the substantive law of the forum state to actions brought pursuant to our diversity jurisdiction.") (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

As the parties agree that this dispute is governed by Michigan substantive law, the court applies Michigan law. *See, e.g., Savedoff*, 524 F.3d at 762 ("As the parties do not dispute that the student loan contracts at issue are governed by Ohio law, we apply Ohio law to the parties' contractual dispute."); *Lakeland Reg. Health Sys. v. Walgreen's Health Initiatives, Inc.*, 604 F. Supp.2d 983, 986 (W.D. Mich. 2009) (Maloney, C.J.) (although contract had a clause calling for the application of Illinois substantive law, "WHI contends that Michigan law governs the tort issues in this case . . . and plaintiff Lakeland's brief also proceeds under Michigan law. Accordingly, the court will apply Michigan law to the determination of whether Lakeland has a cognizable tort cause of action against WHI."); *State Farm Fire & Cas. Co. v. Liberty Ins. Underwriters, Inc.*, 2009 WL

702863, *4 (W.D. Mich. Mar. 16, 2009) ("As the parties do not dispute that the interpretation of the policies is governed by Michigan substantive law, the court applies Michigan law to this dispute."); *Amerisure*, 578 F. Supp.2d at 897 ("As the parties do not dispute that the Amerisure-Carey policy is governed by Michigan substantive law, the court applies Michigan law to this dispute.").

## A FEDERAL COURT'S APPLICATION OF STATE LAW

"'In applying state law, we anticipate how the relevant state's highest court would rule in the case and are bound by controlling decisions of that court.'" *Appalachian Railcar Servs. v. Boatright Enters., Inc.*, 602 F. Supp.2d 829, 837 (W.D. Mich. 2008) (Paul L. Maloney, J.) ("*ARS*") (quoting *NUFIC of Pittsburgh v. Alticor, Inc.*, 472 F.3d 436, 438 (6th Cir. 2007) (Richard Allen Griffin, J.) (citation omitted)). If the state supreme court has not conclusively decided the issue, a federal court presumptively looks to the decisions of the state's appellate courts: In anticipating how the state supreme court would rule, "we look to the decisions of the state's intermediate courts unless we are convinced that the state supreme court would decide the issue differently." *US v. Lancaster*, 501 F.3d 673, 679 n.3 (6th Cir. 2007) (Griffin, J.) (citation omitted); *see also West v. AT&T Co.*, 311 U.S. 223, 236-37 (1940) ("A state is not without law save as its highest court has declared it. There are many rules of decision commonly accepted and acted upon by the bar and inferior courts which are nevertheless laws of the state although the highest court of the state has never passed upon them. In those circumstances the federal court is not free to reject the state rule merely because it has not received the sanction of the highest state court . . . ."), *followed by Mroz v. Lee*, 5 F.3d 1016, 1019 (6th Cir. 1993) and *Dairy, Bakery & Food Workers Local Union No. 386 v. Grand Rapids Milk Div. of Nat'l Dairy Prods. Corp.*, 160 F. Supp. 34, 39 (W.D. Mich. 1958)

(Kent, J.).

In determining the controlling law of the State, a federal court also "*may* give weight" to the decisions of a State trial court, *Lakeland Reg. Health Sys. v. Walgreens Health Initiatives, Inc.*, 604 F. Supp.2d 983, 989 (W.D. Mich. 2009) (Maloney, C.J.) (citing *Bradley v. GMC*, 512 F.2d 602, 605 (6th Cir. 1975)), especially when it is consistent with state appellate decisions, *Bradley*, 512 F.2d at 605. But the federal court is not *obligated* to follow state trial-court decisions. *See Krakoff v. US*, 431 F.2d 847, 849 (6th Cir. 1970) ("[A] federal court is not bound by the decision of state lower court where there has been no determination of a question of state law by the state's highest court.") (citing *CIR v. Bosch*, 387 U.S. 456 (1967)); *see also Gray v. Green Tokai Co., Ltd.*, 2007 WL 1026425, *3 (S.D. Ohio Mar. 30, 2007) (Thomas Rose, J.) ("Lower state court decisions are not binding on federal courts seeking to decide an issue of state law if the federal court is convinced that the highest state court would decide otherwise.") (citing *Woods v. Vermillion Local Sch. Dist.*, 1999 WL 652019, *2 (N.D. Ohio Aug. 9, 1999) (James Carr, J.)) (other citations and internal quotation marks omitted). *Accord Am. Int'l Ins. Co. of P.R. v. Lampe GmbH*, 307 F. App'x 645, 647 (3d Cir. 2009) (citing *Houbigant, Inc. v. Fed. Ins. Co.*, 374 F.3d 192, 199 (3d Cir. 2004)).

## PRECEDENTIAL VALUE OF MICHIGAN DECISIONS

A federal court must accord the same precedential value to a state-court decision as it would be accorded by that state's courts. *See ARS*, 602 F. Supp.2d at – (citing *Mutuelle Generale Francaise Vie v. Life Ass. Co. of Pa.*, 688 F. Supp. 386, 397 n.15 (N.D. Ill. 1988) ("[O]ne Supreme Court decision (*Fidelity Union Trust Co. v. Field*, 311 U.S. 169 . . . (1940)) . . . required a federal court to ascribe the same precedential force to a New Jersey trial court decision that such a decision

would receive in that state's court system under the peculiarities of New Jersey law.")). If a state court would not be bound by a particular state-court decision, then neither is this court. *ARS*, 602 F. Supp.2d at – (citing *King v. Order of United Commercial Travelers of America*, 333 U.S. 153, 161 (1948) ("a federal court adjudicating a matter of state law in a diversity suit is, in effect, only another court of the State; it would be incongruous indeed to hold the federal court bound by a decision which would not be binding on any state court.") (citation omitted)).

Michigan Court Rule 7.215(C)(2) states that "[a] published decision of the Court of Appeals has precedential value under the rule of stare decisis." This subsection makes no distinction based on when the decision was issued.. *ARS*, 602 F. Supp.2d at –.

However, Michigan Court Rule 7.215(J)(1) provides that "[a] panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals *issued on or after November 1, 1990*, that has not been reversed or modified by the Supreme Court or by a Special Panel of the Court of Appeals as provided in this rule." *ARS*, 602 F. Supp.2d at – (emphasis added).

Synthesizing Michigan Court Rules 7.215(C)(2) and 7.215(J)(1), the Michigan Court of Appeals accords precedential value to *all* of its prior published decisions, regardless of when they were issued. *ARS*, 602 F. Supp.2d at –. When a post-November 1, 1990 published Court of Appeals decision conflicts with a *pre*-November 1, 1990 published Court of Appeals decision, however, the *post*-November 1, 1990 decision prevails. *Id.*

When there is a conflict between two published decisions of the Court of Appeals that were *both* issued *after* November 1, 1990, Michigan courts must follow the first opinion that addressed the matter at issue. *ARS*, 602 F. Supp.2d at – (citing *Novak v. Nationwide Mut. Ins. Co.*, 599 N.W.

2d 546, 554 (Mich. App. 1999) (citation omitted)).

By contrast, Michigan Court of Appeals panels are not bound by *un*published decisions of that same court, regardless of when they were issued. *ARS*, 602 F. Supp.2d at – (citing *Iqbal v. Bristol West Ins. Group*, 748 N.W.2d 574, 582 n.5 (Mich. App. 2008) (citing MICH. CT. R. 7.215(J)(1))). Nonetheless, this court may consider and follow unpublished state-court decisions, so long as they do not contradict published decisions of the Michigan Supreme Court or Michigan Court of Appeals. *See Republic-Franklin Ins. Co. v. Bosse*, No. 95-3401, 89 F.3d 835, 1996 WL 301722, *5 n.4 (6th Cir. June 4, 1996) (although unpublished decisions are not generally controlling under Ohio law, "[w]e cite them, nevertheless, due to our sensitivity to state law in deciding diversity cases.") (citing *Royal Indem. Co.*, 364 F.2d at 154 ("Although we are not bound in a diversity case by an unreported decision of a State court of original jurisdiction, we may give weight to this [unreported] decision of the chancery [court] in determining what is the controlling [state] law.")).

**Finally, a federal court's interpretation of state law is not binding.** *ARS*, 602 F. Supp.2d at – (citing *Leavitt v. Jane L.*, 518 U.S. 137, 146 (1996) (Stevens, J., dissenting o.g., joined by Souter, Ginsburg, & Breyer, JJ.) ("[T]he decision of a federal court (even this Court) on a question of state law is not binding on state tribunals . . . .")); *accord McGrath v. Toys 'R Us, Inc.*, 356 F.3d 246, 250 (2d Cir. 2004) (citing *Sargent v. Columbia Forest Prods., Inc.*, 75 F.3d 86, 90 (2d Cir. 1996)); 20 AM. JUR.2D COURTS § 225 (1965). As our Circuit recently emphasized,

> No federal court has the final say on what [state] law means. Even the decision of the highest federal court, the United States Supreme Court, about the meaning of [a state] law has no more binding authority on the [state] Supreme Court than the decision of [another State's] Supreme Court or for that matter any other court.

*Ohio ex rel. Skaggs v. Brunner*, 549 F.3d 468, 472 (6th Cir. 2008); *see also Humphreys v. Bellaire*

*Corp.*, 966 F.2d 1037, 1042 (6th Cir. 1992) ("the district court's reliance on federal cases interpreting Ohio law is only correct if those cases accurately reflect the law of Ohio") (citation omitted).

Accordingly, this court will seriously consider our Circuit's interpretation of state law, or another district court's interpretation of state law, but is not bound by it. *See ARS*, 602 F. Supp.2d at –; *see also Pack v. Damon Corp.*, 2006 WL 1156489, *1 (E.D. Mich. May 1, 2006) ("Michigan courts, in turn, are not bound by the Sixth Circuit's interpretation of Michigan law."). *See, e.g., MPAS v. Michigan DOC*, 581 F. Supp.2d 847, 856 (W.D. Mich. 2008) (Maloney, C.J.) (declining to follow U.S. District Court for the Eastern District of Michigan's determination that MDOC is a political subdivision of the State of Michigan, a matter of state law).

## DISCUSSION

While plaintiff Mark Leys was on the outdoor portion of the premises of a Lowe's Home Centers retail store in Grandville, Michigan, on February 23, 2008, a piece or pieces of ice slid off the store's sloped roof and struck him in the head. *See* Comp ¶ 6. Plaintiff claims that Lowe's negligence caused his injury. To establish a *prima facie* case of negligence at Michigan common law, the plaintiff must establish that (1) the defendant owed a duty to the plaintiff, (2) the defendant breached that duty, (3) that breach caused injury to the plaintiff, and (4) the plaintiff suffered damages. *See Janson v. Sajewski Funeral Home, Inc.*, – N.W.2d –, –, 2009 WL 2611938, *1 (Mich. App. Aug. 25, 2009) (P.J. Cavanagh, Markey, <u>Davis</u>) (citing *Kosmalski v. Saint John's Lutheran Church*, 680 N.W.2d 50, 53, 261 Mich. App. 56, 60 (Mich. App. 2004) (P.J. Whitbeck, <u>Hoekstra</u>, Donofrio) (citing *Case v. Consumers Power Co.*, 463 Mich. 1, 6, 615 N.W.2d 617, 620 (Mich. 2000))).

With regard to the first element of negligence, the nature and degree of the duty which a landowner owes to a visitor depends on whether the visitor is classified as a trespasser, licensee, or invitee. *See Kosmalski*, 680 N.W.2d at 53 (citing *Stitt v. Holland Abundant Life Fellowship*, 614 N.W.2d 88, 462 Mich. 591, 596 (Mich. 2000)). It is undisputed that Lowe's held the premises open to the public, and to the plaintiffs, for commercial purposes. Accordingly, the court finds that Mr. Leys was a business invitee of Lowe's at the time of the incident. *See Kosmalski*, 680 N.W.2d at 53 ("'[W]e hold that the owner's reason for inviting persons onto the premises is the primary consideration when determining the visitor's status: [i]n order to establish invitee status, a plaintiff must show that the premises were held open for a commercial purpose.'") (quoting *Stitt*, 614 N.W.2d at 92, 462 Mich. at 598) (citing, *inter alia*, *Butler v. Ramco-Gershenson, Inc.*, 542 N.W.2d 912, 214 Mich. App. 521 (Mich. App. 1995); *Bradford v. Feeback*, 385 N.W.2d 729, 149 Mich. App. 27 (Mich. App. 1986); *Leep v. McComber*, 325 N.W.2d 531, 118 Mich. App. 653 (Mich. App. 1982)).[7]

As an invitee, the plaintiff entered Lowe's property "'with an implied representation, assurance, or understanding that reasonable care has been used to prepare the premises and, depending upon the circumstances, make any necessary repairs or warn of any discovered hazards.'" *Stitt*, 614 N.W.2d at 92, 462 Mich. at 596-97 (quoting *Wymer v. Holmes*, 429 Mich. 66, 71 n.1, 412 N.W.2d 213, 216 n.1 (Mich. 1987)). "Thus, an invitee is entitled to the highest level of protection under premises liability law." *Stitt*, 614 N.W.2d at 597 (citing *Quinlivan v. Great Atlantic & Pacific Tea Co., Inc.*, 235 N.W.2d 732, 738, 395 Mich. 244, 256 (Mich. 1975)).

---

[7] The Michigan Supreme Court has expressly rejected the definition of "invitee" in 2 Restatement of Torts 2d § 332, which "creates an invitee status that does not depend on a commercial purpose," namely what the Restatement calls a "public invitee" as opposed to a "business visitor." *See Stitt*, 614 N.W.2d at 94, 462 Mich. at 602.

Specifically, the Michigan Supreme Court holds that

> [a] possessor of land is subject to liability for physical harm caused to his invitees on the land if the owner: (a) knows of, or by the exercise of reasonable care would discover, the condition and should realize that the condition involves an unreasonable risk of harm to such invitees; (b) should expect that invitees will not discover or realize the danger, or will fail to protect themselves against it; and (c) fails to exercise reasonable care to protect invitees against the danger.

*Stitt*, 614 N.W.2d at 92,462 Mich. at 597 (citing *Quinlivan*, 235 N.W.2d at 739, 395 Mich. at 258).

However, even as a business invitee, plaintiff was not entitled to be warned of "open and obvious dangers." *Janson*, – N.W.2d at –, 2009 WL 2611938 at *1.[8] Michigan appellate precedents consider a danger to be open and obvious "[i]f the danger and the risk therefrom would be readily apparent to an ordinary person upon casual inspection", because in such situations "issuing a warning is usually pointless." *Janson*, – N.W.2d at –, 2009 WL 2611938 at *1 (citing *Slaughter v. Blarney Castle Oil Co.*, 760 N.W.2d 287, 281 Mich. App. 474, 478-79 (Mich. App. 2008) (<u>P.J. Beckering</u>, Borrello, Davis), *app. denied*, 764 N.W.2d 270, 483 Mich. 984 (2009)). *See, e.g., Ball v. Micu*, 2009 WL 103654 (Mich. App. Jan. 15, 2009) (p.c.) (P.J. Murphy, K.F. Kelly, Donofrio) (icy condition of home's porch was open and obvious, such that owner owed no duty to protect an invitee from that condition; the invitee, who slipped and fell on the ice, was a long-time Michigan resident, was aware that it had recently snowed, knew the ground around the porch was snow-covered, knew it was very cold on the morning of the accident, and admitted that the porch had looked "shiny" and that she therefore tried to be careful entering the house).

---

[8] This rule is properly seen not as an *exception* to the standard for premises liability to invitees, but merely as an application and natural implication of the second criterion of that standard. Namely, if a danger is open and obvious, it cannot be said that, in the words of *Stitt*, 614 N.W.2d at 92,462 Mich. at 597, "the [land]owner . . . should expect that invitees will not discover or realize the danger . . . ."

When the Michigan courts refer to the ordinary person in this context, they mean the "average" person *"with ordinary intelligence."* *Brown v. Taubman Co., LLC*, 2009 WL 3049789, *1 (Mich. App. Sept. 24, 2009) (p.c.) (P.J. Saad, Whitbeck, Zahra) (quoting *Novotney v. Burger King Corp.*, 198 Mich. App. 470, 475, 499 N.W.2d 379 (Mich. App. 1993) (P.J. Sawyer, Michael Kelly, Murphy)) (emphasis added) and citing *Riddle v. McLouth Steel Prods. Corp.*, 440 Mich. 85, 96, 485 N.W.2d 676, 681 (Mich. 1992)). The test is objective, i.e., the inquiry is whether a reasonable person in the plaintiff's position would have foreseen the danger, "not whether the particular plaintiff knew or should have known that the condition was hazardous." *Kachudas v. Invaders Self Auto Wash, Inc.*, 2009 WL 2767303, *4 (Mich. App. Sept. 1, 2009) (Murray, J., concurring) (citing *Corey v. Davenport College of Business*, 251 Mich. App. 1, 5, 649 N.W.2d 392, 394 (Mich. App. 2002) (P.J. Markey, Neff, Saad) (citing *Hughes v. PMG Bldg., Inc.*, 227 Mich. App. 1, 11, 574 N.W.2d 691, 697 (Mich. App. 1997) (P.J. Richard Allen Griffin, Sawyer, O'Connell))).

Even if a condition is open and obvious, however, the possessor of the premises still owes a duty of care to an invitee if "special aspects" of the condition render the hazard effectively unavoidable or constituting an unreasonably high risk of severe harm. *See Robertson v. Blue Water Oil Co.*, 708 N.W.2d 749, 752, 268 Mich. App. 588, 592-93 (Mich. App. 2005) (P.J. Kelly, Meter, Davis), *cited by Jimkoski v. Shupe*, 763 N.W.2d 1, 4 (Mich. App. 2008). "An open and obvious accumulation of snow and ice, by itself, does not feature any 'special aspects.'" *Robertson*, 708 N.W.2d at 752, 268 Mich. App. at 593.

The first issue, then, is whether a reasonable person entering or leaving a building in February in Michigan would foresee the danger potentially posed by ice on the roof of the building.

There appear to be no Michigan decisions – published or unpublished – squarely in this factual scenario of ice *falling* from a roof and causing injury. Nonetheless, in a case involving a worker who slipped on ice or frost on a building roof and fell, the Michigan Supreme Court definitively stated reasoning that applies fully here:

> [P]laintiff has presented no evidence that the condition of the roof was unreasonably dangerous for purposes of premises liability. *The mere presence of ice, snow, or frost on a sloped rooftop generally does not create an unreasonably dangerous condition.* Plaintiff has not articulated any action that could reasonably be expected of possessors of land in Michigan to protect against the obvious dangers that arise when snow, ice, or frost accumulate on sloped rooftops.

*Perkoviq v. Delcor Homes - Lake Shore Pointe, Ltd.*, 466 Mich. 11, 20, 643 N.W.2d 212, 217 (Mich. 2002) (p.c. for C.J. Corrigan and JJ. Taylor, Young, and Markman) (emphasis added). The Leys do not identify any subsequent Supreme Court opinion which modifies or retreats from this rule, and the court finds none. Nor does the Leys' opposition brief even attempt to address the adverse Supreme Court language just quoted.

There *are* limited circumstances under which a plaintiff injured by rooftop ice or snow might escape the rule that such natural accumulation is an open and obvious danger which, nonetheless, does not create an *unreasonably* dangerous condition. The Supreme Court concluded by explaining that

> [t]o avoid summary disposition on this type of claim, a plaintiff must present evidence of "special aspects" of the condition that differentiate it from the typical sloped roof containing ice, snow, or frost. *Lugo* [*v. Ameritech Corp., Inc.*, 446 Mich. 512, 629 N.W.2d 384 (Mich. 2001) (Taylor, J., for the majority)], *supra*.
>
> Accordingly, we . . . reinstate the circuit court's grant of summary disposition in favor of the defendant.

*Perkoviq*, 466 Mich. at 20, 643 N.W.2d at 217.[9] The Leys do not show any such "special aspects."

Instead, the Leys assert that the ice which fell and struck Mr. Leys was not in a position to be seen by him because it fell not from the sloped portion of the roof, but from the flat roof above that. *See* P's Opp at 7 and Ex 2 at 28:4-12. The Leys cite deposition testimony from a Lowe's employee, Daniel Powlus, for the proposition that the ice came from the upper, flat roof, rather than the sloped roof. This argument is unavailing for several reasons. For one thing, Powlus never testified that he actually *saw* ice on the flat upper roof shortly before the accident, or that he actually saw an absence of ice on the lower, sloped roof shortly before the accident.

Rather, in the deposition excerpts cited by the Leys, Powlus testified, at most, that he "believed" that any ice that fell must have come only from the upper, flat roof. Powlus testified that he heard a "crack", which he *speculated* was the sound of ice falling from the flat upper roof onto the lower, sloped roof (which was made of metal) before striking Mr. Leys. Significantly, Powlus testified only that *after* he saw the ice strike Mr. Leys, he looked up and saw no ice on the lower, sloped roof. Powlus had this exchange with counsel:

> Q. I believe that any ice or snow was on the upper roof, and I think that's where the ice came from.
>
> A. Okay. Why do you think that?
>
> Q. Because there was nothing – there was nothing here when I – I remember looking up there, because I wonder where that [the falling ice] came from, and there was no ice on that section.

P's Opp, Ex 2 (Deposition of Daniel Powlus dated June 30, 2009) at 24:18-25. It is unclear, at best,

---

[9]

The remaining three members of the Court issued a concurring opinion which stated, in its entirety, "I concur in the result of the majority opinion. Plaintiff presented no evidence that the icy roof was unreasonably dangerous despite its obviousness." *Perkoviq*, 466 Mich. at 20, 643 N.W.2d at 217 (Weaver, J., concurring, joined by Cavanagh & Kelly, JJ.).

whether Powlus's deposition testimony could even logically create a genuine issue as to whether the falling ice was originally on the lower, sloped roof, where a reasonable person in Leys' position could have seen it through casual observation.

Moreover, even if a factfinder could infer that the "crack" was the sound of ice falling from the upper, flat roof to the lower, sloped roof, that would not be evidence that the lower, sloped roof contained no ice before the ice fell onto it from the upper roof. Whether or not ice fell from the flat upper roof onto the lower sloped roof, tells a factfinder nothing about whether the lower sloped roof itself also contained ice before the accident.

Thus, even assuming *arguendo* that the record permits the finding that the ice fell only from the upper flat roof, and not at all from the lower, sloped roof – itself a dubious proposition – the Leys present no case law to persuasively suggest that the Michigan Supreme Court would find that to be a "special aspect" taking the rooftop ice out of the purview of the "open and obvious danger" doctrine. While *Perkoviq* happened to involve a sloped roof, nothing in *Perkoviq* or any subsequent appellate decision provides any basis for concluding that its reasoning was somehow *limited* to sloped roofs.

Moreover, the court must consider the extreme consequences which would follow from endorsing the notion that ice falling from a flat roof poses an unreasonably dangerous condition even though ice falling from a sloped roof does not. In *Perkoviq*, the Supreme Court concluded its opinion by stating, "Plaintiff has not articulated any action that could reasonably be expected of possessors of land in Michigan to protect against the obvious dangers that arise when snow, ice, or frost accumulate on sloped rooftops." *Perkoviq*, 466 Mich. at 20, 643 N.W.2d at 217. Surely the Supreme Court was aware that it was physically possible for a property-owner such as Lowe's to

erect a continuous barrier – a sort of rooftop "curb" – to reduce the risk of ice falling off a sloped roof. Yet the Supreme Court focused not on what was theoretically possible, without consideration of the financial burden to the premises-owner, but on what was *reasonable* to expect of the premises-owner. This court must be mindful that the Supreme Court determined that a Michigan property-owner cannot be reasonably expected, under penalty of tort liability, to build a barrier "to protect against the obvious dangers that arise when" ice accumulates on a sloped rooftop – which is, if anything, *more* likely to send ice sliding down towards the ground. *A fortiori* there is no reason to think that Court would expect the property-owner to pay for such preventative measures when the ice is on a *flat* roof, which ostensibly is not as likely to send ice sliding, through force of gravity, towards the ground.

This court can go only so far as the Michigan Supreme Court would likely go, and no farther. Presently, Michigan case law does not authorize this court to impose on property-owners tort liability for "failing" to prevent something so obvious, common and predictable as ice accumulating on, and occasionally falling from, a roof in the winter months in Michigan. That principle does not change whether the roof in question is flat, sloped, or, as is the case here, both flat and sloped. Such an onerous new requirement must be imposed, if at all, only by the Michigan Supreme Court or the people's elected representatives in the Michigan Legislature.[10]

---

[10]

The Leys' final attempt to survive summary judgment is quite creative, but utterly meritless. They contend that because Lowe's had placed two yellow or orange cones on the ground near the store's exit (to warn the public that the ground might be icy or otherwise slippery), it should be held responsible for diverting Leys' attention from other locations such as the rooftop! *See* P's Opp at 2-3 and 7, discussing Ex 1 (Deter Dep) at 16 and 24-25 and Ex 2 (Powlus Dep) at p. 19 and 26-28. Not surprisingly, the plaintiffs present no Michigan authority to support such a novel view of premises liability.

That approach would ill-serve the fundamental purposes of tort law, because it would give

## ORDER

The defendant's motion for summary judgment [document # 55] is **GRANTED.**

A separate judgment shall issue as required by FED. R. CIV. P. 58.

This case is **CLOSED** and **TERMINATED**.

This is a final and immediately appealable order.

**IT IS SO ORDERED this** 7th **day of October 2009.**

/s/ Paul L. Maloney
Honorable Paul L. Maloney
Chief United States District Judge

---

property-owners a disincentive to post cones cautioning entrants about possibly wet or icy ground. If the property-owner posted such cones, it would pay anyone injured by falling ice for "distracting" him from the potential peril on the roof. Conversely, if the property-owner did something to draw a customer's attention to the roof, where ice might be about to fall, it might have to pay someone injured by slipping on ground that it knew or should have known was icy. The case law gives this court no reason to believe that the Michigan Supreme Court would adopt such a policy.